IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

KATHY M. CROSSLAND, )
)
Plaintiff, )
)
v. ) Case No. CIV-07-266-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Kathy M. Crossland (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 16, 1964 and was 42 years old at the time of the latest decision by the ALJ. Claimant completed her education through the eighth grade. Claimant has worked in the past as a nurse's aide, a food server, a laundry worker, and a cashier/stocker. Claimant alleges an inability to work beginning January 31, 2003 due to migraine headaches, asthma, susceptibility to bronchitis and pneumonia, carpal tunnel syndrome in both hands, weakness and grip problems, spastic colon and abdominal pain, kidney stones, lumbar spine problems with pain radiating into her left leg,

sleep problems, depression, and anxiety.

## Procedural History

On September 15, 2004, Claimant filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 11, 2006, a hearing was held before ALJ Lantz McClain in Sallisaw, Oklahoma. By decision dated December 28, 2006, the ALJ found that Claimant was not disabled. On June 26, 2007, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity to perform a full range of sedentary work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to properly weigh the opinion of Claimant's treating physician; and (2) failing to perform a proper credibility analysis resulting in a

credibility finding which is not supported by substantial evidence.

## Treating Physician's Opinion

Claimant asserts the ALJ failed to afford the proper weight to the opinion of Dr. David Trent, a treating physician. In November of 1996, Claimant underwent a surgical procedure performed by Dr. R. Clio Robertson. Specifically, Dr. Robertson performed a laminectomy, discectomy, posterior lumbar interbody fusion, lateral mass fusion, and Luque segmental fixation with bone graft at L5-S1. (Tr. 157). On August 4, 1997, Dr. Robertson placed Claimant on a permanent lifting restriction of 10 pounds with instruction to avoid activities which require extension bending, lifting, and stooping. (Tr. 156).

Claimant was diagnosed and treated for chronic irritable bowel syndrome in March of 2002. (Tr. 159-160). She also suffered from abdominal pain and was treated for the condition in May and June of 2002. (Tr. 236, 290).

On July 10, 2002, Claimant sought treatment for pain in her right lower quadrant. Dr. Judy Trent diagnosed Claimant with chronic low back pain and irritable bowel syndrome. (Tr. 715).

On July 31, 2002, Claimant was attended by Dr. Jerry O. Lenington for back pain. Specifically, Dr. Lenington found Claimant suffered from radicular pain S1 left side postlaminectomy pain syndrome. He treated Claimant with a lumbar epidural steroid injection. (Tr. 435).

On August 6, 2002, Claimant saw Dr. David Trent, complaining of ongoing back pain. She told Dr. Trent she had experienced the pain for several months and related it to an injury in 1995. Dr. Trent diagnosed Claimant with chronic lumbago with progression of disease, history of asthma, and irritable bowel syndrome. He treated Claimant with pain medication. (Tr. 714).

Claimant received another epidural steroid injection for back pain from Dr. Lenington on August 28, 2002. (Tr. 434). On October 1, 2002, Claimant reported a 15% improvement in the pain. (Tr. 433).

On November 7, 2002, Claimant saw Dr. Judy Trent, stating she was experiencing increased problems with her back. Dr. Trent found Claimant's dexascan revealed osteopenia. (Tr. 699).

Claimant continued seeking treatment from Dr. Judy Trent and Dr. Lenington for back and abdominal pain from December of 2002 through July of 2003. She was treated with pain medication and lumbar epidural steroid injection. (Tr. 298, 432, 685-690, 692-693, 695-696).

On July 14, 2003, Claimant sought treatment for left shoulder pain. Her shoulder was immobilized and she was treated with pain medication. (Tr. 305-307, 680-684). On July 16, 2003, an MRI of Claimant's cervical spine revealed degeneration at C5-6 with a mild bulging annulus. (Tr. 469).

On August 11, 2003, Claimant received another lumbar epidural

steroid injection from Dr. Lenington. Dr. Lenington diagnosed S1 left radicular pain. He noted Claimant's last epidural gave her pain relief for about four months. (Tr. 431). Claimant received another injection on December 8, 2003. (Tr. 429).

Claimant received treatment for her asthmatic condition on March 23, 27, and 30, 2004 both at the emergency room and with Dr. David Trent. (Tr. 311-314, 332, 662). Claimant also received pain medication from Dr. Trent for her chronic back pain. (Tr. 662). Claimant received another lumbar steroid injection from Dr. Lenington on March 31, 2004. (Tr. 427).

On July 27, 2004, Claimant was attended by Dr. Lenington. He noted Claimant was hypoesthetic in her right leg in the S1 distribution. He administered another lumbar epidural steroid injection. (Tr. 425).

Dr. Trent continued treating Claimant's back pain on July 30, 2004, prescribing pain medication. (Tr. 644). He also treated Claimant for asthma during this period. (Tr. 647-648).

On November 4, 2004, Claimant was treated by Dr. Trent for low back pain, continuing treatment with pain medication Lorcet. Dr. Trent also found Claimant to suffer from asthma, treating her with Ultram. (Tr. 643).

Claimant also suffered from pain in her left foot and ankle on January 4, 2005. Testing revealed venous valvular insufficiency in Claimant's left femoral vein. (Tr. 404-406, 408). She sought

7

follow-up treatment from Dr. Trent for her left ankle pain. (Tr. 639). Dr. Trent referred Claimant to Marie Pham, an advanced practical nurse for low back pain and left leg pain.

Ms. Pham saw Claimant on January 17, 2005. Ms. Pham diagnosed Claimant with lumbago with left leg radiculopathy and a history of chronic low back pain. Ms. Pham sought to send Claimant out for an MRI and x-rays of her lumbar region. Ms. Pham opined Claimant's pain could be coming from the K-wire associated with her prior fusion. Claimant was kept from work for two weeks. (Tr. 485-486).

Ms. Pham saw Claimant again on January 31, 2005. Claimant's MRI was read by Dr. Anthony Capocelli. He found Claimant had no herniation, had an excellent fusion at L5-S1, and had an essentially normal MRI. Ms. Pham referred Claimant back to Dr. Lenington for chronic pain management. Claimant was permitted to return to work. (Tr. 483). On February 3, 2005, Claimant received another lumbar epidural steroid injection from Dr. Lenington. (Tr. 423).

On April 26, 2005, Claimant sought treatment from Dr. Trent for left wrist pain, pain in the palm of her left hand, and numbness in the third through fifth fingers of her left hand. She wore a wrist splint. Dr. Trent noted Claimant's wrist was tender to palpation. He diagnosed Claimant with carpal tunnel syndrome and treated her with medication and a wrist splint. (Tr. 443).

On May 3, 2005, Claimant received an orthopedic evaluation of her left wrist and hand by Dr. Marvin E. Mumme. Dr. Mumme found

Claimant was not in acute distress but did have numbness in her left hand and all fingers. No bony abnormalities were noted in the x-rays. Dr. Mumme diagnosed Claimant with median and possible ulnar nerve compression, left upper extremity, at the wrist. He recommended she remain in the medication Dr. Trent prescribed, Mobic, and take off work for two weeks. (Tr. 480-481).

On May 23, 2005, Dr. Mumme performed a left carpal tunnel release after an EMG test revealed findings consistent with carpal tunnel syndrome in Claimant's left upper extremity. (Tr. 473, 549-550). Claimant reported significant improvement with some pain remaining in the long and ring fingers. (Tr. 576).

Claimant received a lumbar epidural steroid injection from Dr. Lenington on May 31, 2005. (Tr. 607).

On July 11, 2005, Claimant reported problems with her right hand to Dr. Mumme. She indicated she tried to work but was unable to do so because of her hand. (Tr. 573). Dr. Mumme performed a right carpal tunnel release on Claimant's right wrist on July 19, 2005. (Tr. 547-548). All appeared to be going well with the wrist until August 30, 2005 when Claimant informed Dr. Mumme she was having some pain, numbness, tingling, and swelling in her right ring finger. Dr. Mumme did not find swelling, found her motor function intact, and had excellent wrist motion. He thought that a proflex splint might help. (Tr. 568). Claimant continued to complain of numbness and tingling in her hands when she elevated her hands above

9

shoulder level in November of 2005. (Tr. 563). Claimant was restricted from work by Dr. Mumme until December 19, 2005. (Tr. 564).

Claimant received a neurological evaluation from Dr. William L. Griggs on December 8, 2005. He found Claimant had patchy decreased sensation in the fourth and fifth fingers of her right hand with normal sensation in her left hand. Dr. Griggs noted a dampening of Claimant's radial pulses bilaterally when her arms were raised over her head and she turns her head to the opposite shoulder. Dr. Griggs diagnosed Claimant with status post bilateral carpal tunnel surgery, residual numbness in the fourth and fifth finger of her right hand and pain in the right hand, some pain below the elbow on the left, and numbness in her hands accentuated by raising her hands up over her head with suspected thoracic outlet syndrome. (Tr. 555-557). After an additional EMG, Dr. Griggs found Claimant showed no evidence of radiculopathy, peripheral neuropathy, or thoracic outlet syndrome. (Tr. 557).

On January 19, 2006, Claimant was evaluated by Dr. R. Cole Goodman, complaining of right hand pain. Dr. Goodman found Claimant was not in acute distress. He also noted Claimant had 50 pound grip strength in her right hand and pinch strength of 10 pounds. He found Claimant had 80 pounds of grip strength in her left hand and pinch strength of 18 pounds. (Tr. 615). Dr. Goodman concluded Claimant had traction neuritis from scarring following her surgery.

10

(Tr. 614).

On January 25, 2006, Dr. Goodman performed a neuroplasty of the median nerve at the right carpal tunnel. Claimant's right median nerve showed a significant amount of cicatricial adherence and even slight passive extension placed traction on the nerve. Dr. Goodman dissected the median nerve free of scar tissue. (Tr. 585-586). Dr. Goodman restricted Claimant to one handed light work. (Tr. 613).

On January 31, 2006, Dr. Goodman examined Claimant and found her sensation had returned except for the tip of her middle finger and part of the tip of her ring finger. This numbness continued through March 31, 2006. (Tr. 612).

Claimant continued reporting numbness to Dr. Goodman in April, May, and June of 2006. She realized some improvement following an injection from Dr. Goodman. However, she continued to experience numbness in June of 2006. Dr. Goodman released Claimant for work. (Tr. 609). On August 10, 2006, Claimant told Dr. Goodman she had some intermittent burning pain at the base of her wrist in her forearm. She still had some numbness in her middle finger. Id.

On March 1, 2006, Claimant again received a lumbar epidural steroid injection. (Tr. 605). Dr. Trent continued pain treatment for Claimant's low back pain and treated her asthma. (Tr. 630-632).

On August 23, 2006, Claimant was attended by Dr. Jim C. Martin, complaining of pain in both wrists. She also stated she felt numbness and tingling radiating into the middle, index, and ring

11

finger of both hands. She had weakness in her hands when lifting, grasping, or gripping objects. Claimant told Dr. Martin she was having difficulty performing normal activities, including driving, writing, and washing dishes due to pain and intermittent swelling of her wrists. She stated that she often drops objects and was experiencing significant pain with any vibratory activity such as operating a lawn mower. (Tr. 616). Dr. Martin concluded Claimant had suffered a cumulative trauma through her employment over a period of two years, sustaining bilateral carpal tunnel syndrome requiring surgical intervention. He found Claimant exhibited evidence of severe median nerve neuritis and flexor tendonitis affecting both hands and wrists, with the right hand affected more than the left. (Tr. 617).

Claimant received a lumbar epidural steroid injection from Dr. Lenington on August 1, 2006. (Tr. 603).

On June 2, 2005, Dr. Trent completed a Treating Physician's Medical Source Statement - Physical form on Claimant's conditions. He concluded Claimant could frequently lift and carry less than 10 pounds and occasionally lift and carry less than 10 pounds. He found Claimant could continuously stand and/or walk for one hour in an 8 hour day and continuously sit for 2 hours in an 8 hour day. (Tr. 492). He opined Claimant would need a job which permits shifting position at will from sitting, standing, and walking, would need to take breaks during an 8 hour work day that would not be

12

accommodated by a 10 minute working break, a 30 minute lunch break, and a 10 minute afternoon break, and experiences severe chronic pain. (Tr. 493). Dr. Trent stated Claimant took Mobic and Lorcet, both of which would affect her ability to concentrate. He found Claimant could never climb or balance and only occasionally stoop, kneel, crouch, and bend. Id. Claimant would also be subject to environmental limitations due to her asthma. (Tr. 494).

In his decision, the ALJ found Dr. Trent's opinions were not entitled to controlling weight because he "is [Claimant's] family doctor rather than a specialist, and his opinions are inconsistent." (Tr. 25). In support of this position, the ALJ cites to the single circumstance where Dr. Trent found Claimant was subject to the above limitations while her neurosurgeon released her for work. Id.

It is well-established that any time an ALJ rejects the opinion of a treating physician or fails to give it controlling weight, he must provide substantiation for that rejection. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to

13

controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ appears to have afforded Dr. Trent's opinions no weight, despite recognizing his status as a treating physician. His

14

first rationale for doing so, Dr. Trent being a family physician rather than a specialist, smacks in this case of the universally rejected argument that an opinion is provided as an accommodation to the patient. Miller v. Chater, 99 F.3d. 972, 976 (10th Cir. 1996) citing Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). Moreover, the party releasing Claimant was Ms. Pham, an advanced practice nurse and not a neurosurgeon as the ALJ stated. Therefore, accepting this latter source in lieu of a treating physician is not justified. Further, Dr. Trent's opinions are not necessarily inconsistent when considering the deteriorating nature of her condition. More base, however, is the fact the ALJ failed to engage in the analysis required by the prevailing case authority in order to justify affording Dr. Trent's opinion no weight at all. On remand, the ALJ shall reconsider the evidence and his findings.

### Credibility Analysis

Claimant also challenges the ALJ's credibility analysis. After briefly discussing Claimant's testimony concerning the effect her condition has upon her daily activities, the ALJ found

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 21).

The ALJ failed to discuss his supporting rationale for this

15

conclusory statement. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ

is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Some analysis is required and the ALJ's opinion is devoid of any reasoning upon which this Court can evaluate his credibility determination. On remand, the ALJ shall provide evidentiary support for his credibility findings.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 19th day of March, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE